**No. 26-4844**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

*DAKOTA DELANCE*
*Plaintiff/Appellant,*

*v.*

*UNION HOME MORTGAGE CORP., a Ohio Corporation; SN SERVICING CORPORATION, an Alaskan Corporation; U.S. BANK TRUST, N.A., AS TRUSTEE FOR LB-DWELLING SERIES VI TRUST, a trust entity,*

*Defendants / Respondents*

_____

**APPELLANT'S EMERGENCY MOTION UNDER CIRCUIT RULE 27-3**

**RELIEF REQUESTED BY AUGUST 5, 2026**

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**

**The Honorable Gloria Navarro, Judge**

_____

**Andrew A. Bao, Esq.**
**Nevada Bar No. 10508**
**Andrew Bao & Associates**
**8020 S. Rainbow Blvd, Suite 100-163**
**Las Vegas, Nevada 89139**
**Telephone: (725) 204-9579**
**Email: abao@abao.law**

*Attorneys for Plaintiff/Appellant*
*DAKOTA DELANCE*

1

3586854.1

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR

## INJUNCTION PENDING APPEAL

### I.      Summary of Facts

All facts supporting this Motion are set forth in **Exhibit A** hereto, the first amended complaint (ECF No 6) and **Exhibit B** hereto, Plaintiff Dakota Delance ("Plaintiff" and/or "Appellant" ) declaration.  Both exhibits are incorporated herein by reference.

To summarize, Plaintiff is the title owner of real property commonly known as 4701 E. Savoy Blvd., Pahrump, NV 89061, Assessor's Parcel Number 045-293-10 ("Property") since September 2020.  To finance the purchase, Plaintiff obtained a construction mortgage from Defendant Union Home Mortgage ("UHM"), consisting of a promissory note and deed of trust for a principal balance of $348,000.00 ("Note" and "Deed of Trust, **Exhibit A** hereto as **Exhibits 1 and 2**, respectively.

Sometime in July 2021, construction of the residence at the Property was completed.  In November 2021, Plaintiff moved his family into the Property and it has been his principal residence since.  In December 2021, a Construction Conversion Modification Agreement was recorded to convert the terms of the Note and Deed of Trust to reflect the completion of the construction.  See **Exhibit 3** hereto (Note, Deed of Trust, Construction Conversion Modification Agreement

3586854.1

("**Exhibits 1-3**") are hereby attached hereto referred to as "Loan").

In January 2024, Plaintiff began experiencing financial difficulties and UHM offered Plaintiff a forbearance agreement. Plaintiff accepted.

In late summer 2024 or fall 2024, UHM then offered Plaintiff a loan modification agreement. In order to qualify for the modification, UHM instructs Plaintiff to make three (3) trial payments.

Plaintiff makes all three trial payments and in December 2024. UHM informs Plaintiff in writing that he qualifies for a modification. For 6-7 weeks, UHM does nothing despite Plaintiff's attempts to ascertain the status.

In late January 2025, UHM then advises that there is a new servicer of the Loan as of February 18, 2025. UHM advises Plaintiff in writing that "the new servicer will honor your modification and get the modification documents prepared."

Between February and March 2026, UHM continues to oscillate back and forth as to whether it is the servicer or if there is a new servicer. UHM does not provide Plaintiff the identity of the new servicer so that Plaintiff can contact the new servicer for updates. As Plaintiff grows more and more confused, in late March 2025 UHM again advises that the modification would be honored without identifying who the servicer is and when the modification will be provided.

Thereafter, UHM sends a modification to Plaintiff, with UHM listed as the

6

3586854.1

lender on the modification rather than the "new servicer" as of February 18, 2025 (**Exhibit A,** Exhibit 4 hereto). Plaintiff is uncertain if this modification is valid, but makes a payment pursuant to this modification to UHM to avoid further problems.

Upon receiving this payment, UHM immediately service releases the Loan to Defendant SN Servicing. Upon becoming the servicer of the Loan, SN Servicing completely disavows and repudiates the existence of any modification of the Loan and demands $43,049.49 from Plaintiff when Plaintiff's monthly mortgage payment on the Loan has always been around $2,000.00.

Despite attempting, for months, to thereafter resolve this issue with SN Servicing, SN Servicing continues to assert that a modification did not exist. More egregiously, Defendant SN Servicing recorded a Notice of Default on December 15, 2025, claiming that Plaintiff owes all payments on the Loan since January 2024. This is despite the fact that UHM accepted 3 trial payments in late 2024 (to qualify Plaintiff for a loan modification) and a modification payment in April 2025, all of which Plaintiff paid well after January 2024.

At some point U.S. Bank became the owner of the Loan and is currently the owner of the Loan.

In April 2026, Defendant SN Servicing began sending persons to the Property to conduct "property preservation" checks despite knowing that Plaintiff

7

and his family were still residing in the Property. This puts Plaintiff and his family in further fear that the Property can be sold while this dispute remains ongoing.

As of July 7, 2026, Defendant SN Servicing recorded a Notice of Sale and posted it on Plaintiff's front door. **Exhibit C** hereto. The auction date is set for August 6, 2026.

## II.    Procedural History

Since late April 2026, Defendants' two (2) separate motions to dismiss the FAC were fully briefed and awaiting a district court decision. On July 7, 2026, Defendant SN Servicing filed a Notice of Sale (**Exhibit C** hereto) setting a sale date for August 6, 2026. On July 10, 2026, Plaintiff field an emergency motion in the district court to seek a temporary restraining order / preliminary injunction halting the pending the litigation.

On July 20, 2026, the Court sent out notice that the Defendants' motions to dismiss were granted, that Plaintiff's emergency motion for temporary restraining order / injunctive relief is denied and that Plaintiff's claims are dismissed with prejudice.

Pursuant to FRAP 27(2)(B)(iii), the July 17, 2026 Order is attached hereto as **Exhibit D[1].**

---

[1] Included with the Order in **Exhibit D** is the Court notice reflecting that the July 17, 2026, Order was sent to all parties on July 20, 2026 at 1:16 PM PDT.

8

### III. Legal Standard

A temporary restraining order's purpose is to "preserve the status quo and preventing irreparable harm." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974). An applicant for a temporary restraining or preliminary injunction need only show: (1) a likelihood of success on the merits; and (2) a likelihood of irreparable harm; (3) the balance of equities are in the movant's favor; and (4) the injunction is in the public interest. The Court evaluates these factors on a "sliding scale" approach but the movant must still demonstrate a likelihood of irreparable harm and that the balance of hardships tips sharply in this favor. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20; 129 S. Ct. 365 (2008); *Sierra Forest Legacy v. Rey,* 577 F. 3d 1015, 1021 (9th Cir. 2009).

Based on this standard, this Court can issue an order pursuant to FRAP 8 enjoining Defendants from foreclosing on the Property pending this appeal.

### IV. Legal Argument

During the Great Recession and its aftermath, this Court has dealt with many lawsuits where borrowers file suit against servicers for loan modification discussions that never materialize. The FAC allegations herein demonstrate circumstances that far exceed simple failed discussions and promises to avoid foreclosure. Rather, the record demonstrates that Defendants, whether

9

intentionally or unintentionally, took affirmative acts that created roadblocks to prevent the parties from finalizing a modification that both parties wished to execute. Appellant submits that based on the record before the court, Appellant has demonstrated all the requirements to obtain this injunctive relief.

### A. Relief in the District Court is not required under FRAP 8

Here, Appellant filed an emergency motion for injunctive relief in the underlying district court on July 10, 2026. Pursuant to the attached district court order (**Exhibit D**), the district court denied Plaintiff's motion and did not state any reasons for this denial. The district court's order dismissing the underlying district court case was solely pursuant to granting the Defendants' Motions to Dismiss.

Furthermore, it would be impracticable for Appellant to re-file this motion in the district court when the district court has previously denied it. Appellant submits the following for the Court's consideration.

### B. Plaintiff will Suffer Irreparable Harm if the Foreclosure is Allowed to Proceed

If real property is permitted to be sold at a foreclosure sale, Plaintiff would suffer irreparable harm for which money damages would be inadequate. *Pickette v. Comanche Construction,* 108 Nev. 422, 736 P.2d 42 (1882). This is because real property is considered unique and loss of property rights generally results in irreparable harm. *Dixon v. Thatcher,* 103 Nev. 414, 742 P. 2d 1029 (1987).

10

3586854.1

Here, the Property is real property. Plaintiff has already suffered irreparable harm – SN Servicing is claiming that no modification of the Loan exists and is requesting Plaintiff pay all almost due and owing on the Loan since January 2024. Plaintiff will suffer further irreparable harm if Defendants take title to the Property via an August 6, 2026, auction. Money damages are inadequate if Plaintiff loses his principal residence where he and his family reside. If Plaintiff retains the Property, additional monetary damages can address other harms. If Plaintiff does not retain the Property, money damages are wholly inadequate.

Accordingly, Plaintiff submits the irreparable harm element is satisfied.

**C.     <u>The Balance of Hardships Weighs in Favor of Plaintiff.</u>**

As set forth in the preceding section, the hardship Plaintiff will suffer (and has suffered) is the complete loss of title to the Property and the house he built for his family (**Exhibit B, ¶¶**30-32). Defendants' hardship will be minimal, if any. Defendants are multi-billion dollar financial corporation that have portfolios of residences; Plaintiff is a regular American consumer attempting to pay him mortgage but Defendants' actions have prevented him from doing so.

Thus, in balancing the hardships, this factor heavily favors injunctive relief in favor of Plaintiff / Appellant.

11

**D.** **The First Amended Complaint Demonstrates a Reasonable Likelihood of Prevailing on the Merits.**

Plaintiff has a reasonable probability of prevailing on the merits on all of the claims set forth herein.

**1.** **Breach of Contract**

As to the first claim for breach of contract, Plaintiff must demonstrate: 1) the existence of a valid contract; 2) Plaintiff's performance of the contract; 3) a breach by the defendant, and 4) damages as a result of the breach. *See e.g., Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1265 (Nev. 2000)(quoting *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135, 734 P.2d 1238, 1240 (1987)).

The key issue is whether an implied in fact contract existed. Implied in fact contracts can arise from the intention / actions of the parties, including the promises of the parties demonstrating general obligations that are sufficiently clear. *Certified Fire Prot. Inc., v. Precision Construction,* (Nev. 2012), 128 Nev 371, 379-380; 283 p. 3d 250, 257. The district court opined that no implied contract could exist based on the FAC allegations (**Exhibit D** at 4-5). Plaintiff submits the FAC alleges otherwise.

In exchange for three trial payments, Plaintiff qualified for a loan modification in December 2024. This loan modification, however, was never provided and as

12

3586854.1

detailed in the exhibits hereto, UHM made a multitude of inconsistent statements as to the status of the modification (running "final number" in December but never providing a modification agreement, claiming the loan servicer would change as of February 18, 2025, but then continuing to service the Loan, etc).

In late March 2025, after Plaintiff attempted multiple times to seek assistance from UHM, UHM sent a modification agreement to Plaintiff (**Exhibit A,** Exhibit 4 thereto).  In April 2025, despite having significant questions as to the validity of this proposed document, Plaintiff paid UHM pursuant to this modification to avoid further problems.

Upon making the payment, however, UHM immediately released the servicing to SN Servicing, who immediately disavowed the existence of any modification and continues to disavow the existence of a modification.  Thus, it is unclear whether the modification (**Exhibit 4**) was the actual modification promised to Plaintiff in December 2024,  whether it was a new contract, or whether it was a sham.

Thus, UHM breached its agreement to provide a modification to Plaintiff after receiving three (3) trial payments from Plaintiff and asserting to Plaintiff, in writing as of December 2024, that he qualified for a loan modification.  When Plaintiff performed the purported modification by making a payment (**Exhibit A,** Exhibit 4 thereto), SN Servicing's conduct unequivocally repudiated the existence of any

3586854.1

modification of the Loan when it service released the Loan to SN Servicing. In June 2022, SN Servicing demanded $43,049.49 from Plaintiff. In the Notice of Default (**Exhibit A,** Exhibit 5 thereto), SN Servicing assets the Loan is due for January 2024. Plaintiff qualified for the modification in December 2024 and was told in February / March 2025 that it was unclear who the servicer was to provide the modification. Plaintiff has made at least 1 additional payment on the modification (beyond the trial payments) that Defendant UHM accepted.

Based on these FAC allegations and the declaration, promises were exchanged – a modification of the Loan. Actions were taken to finalize it but to no avail. The general obligations of the parties are clear – to modify the Loan. These FAC allegations demonstrate a reasonable probability that an implied contract exists and /or at least the district court must make a factual determination if an implied in fact contract exists and whether Defendants breached said contract.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

As to the second claim for the breach of implied covenant of good faith and fair dealing, this claim is ripe when the terms of a contract are complied with but one party to the contract deliberately countervenes the intention and spirit of the contract. *Hilton Hotels. Corp v. Butch Lewis Prods., Inc,* 107 Nev. 226, 808 P.2d 919, 923. This claim will also rise and fall depending on whether the Court finds an implied contract existed. Here, UHM and SN Servicing, both acting on behalf of

14

the owner of the Loan at all relevant times ( U.S. Bank), breached this duty repeatedly by failing to timely offer Plaintiff a modification. When a proposed modification agreement was finally offered (**Exhibit A,** Exhibit 4 thereto) and Plaintiff made a payment, SN Servicing then repudiated that any such agreement to modify the Loan existed.

### 3. <u>Negligent Misrepresentation</u>

As to the third claim for negligent misrepresentation, Plaintiff must demonstrate that Defendants made false representations by failing to exercise reasonable care in ascertaining the truth (rather than intentionally), Plaintiff justifiably relied on those false representations and suffered damages. *Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 448-49, 956 P. 2d 1382, 1387 (1998). Here, these elements are readily met. The FAC and Plaintiff's declarations assert multiple representations made by UHM starting in December 2024. At a bare minimum, Defendant UHM failed to exercise reasonable care in making these representations because they were untrue and/or Defendants never followed through with their promises (i.e., Plaintiff qualified for a loan modification in December 2024; a modification would be forthcoming in December 2024 after "final numbers" are ran; the servicing of the Loan was being serviced released on February 18, 2025, which may or may not have occurred; providing inconsistent statements as to what was owed on the Loan / modification and when). Plaintiff justifiably relied on

15

3586854.1

those statements without knowing they were false – UHM is a large mortgage company and Plaintiff accepted UHM's offer to modify the Loan. The damages that result is the potential that Plaintiff loses his home to foreclosure.  In addition, SN Servicing is now claiming that such a modification did not exist, and Plaintiff now has a mortgage due and owing since January 1, 2024.  Damages are significant in such a situation.

The district court asserted that the negligent misrepresentation claim fails because these representations are for future promises that are not actionable (**Exhibit D,** page 7).  As set forth in the breach of contract section, Plaintiff submits that this record does not show a future promise; it shows a promise to modify that, due to UHM's own actions, prevented the modification from being finalized.

### 4.    Promissory Estoppel

As to fourth claim promissory estoppel,  four elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must have relied to his detriment on the conduct of the party to be estopped. *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984). "Accordingly, the first prerequisite of the agreement is a promise." *Vancheri v.*

16

3586854.1

*GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989). Here, if no contract exists, UHM made a promise to Plaintiff in late 2024 – make three (3) trial payments and you will qualify for a loan modification. There were no other conditions attached. Should an enforceable contract not be found between Plaintiff and any of the Defendants herein, at a bare minimum promissory estoppel is a claim that Plaintiff can reasonably be expected to prevail on at the time of trial.

Here, the district court found that the *Lalli v. Bank of America, N.A.,* 2014 WL 334810, case is dispositive of this issue; i.e., a promissory estoppel claim cannot be maintained based on promises of a loan modification. Exhibit D at 8. This case is distinguishable.

In *Lalli,* Plaintiffs alleged that after paying the three trial payments, they had questions about the permanent modification and did not sign it. Months passed and the defendant banks in that case initiated an unlawful detainer action. *See Lalli* at *1. Here, Plaintiff / Appellant did not simply have questions about a modification and therefore failed to sign it. As alleged in the FAC, Plaintiff made a payment under the permanent modification before signing it (FAC ¶45). Immediately thereafter after providing a revised copy of the permanent modification for signature, UHM service released the Loan to Defendant SN Servicing who thereafter disavowed the modification even exists (FAC¶46-58). This was despite the fact that in February 2025, months prior, UHM had informed Plaintiff that his Loan was

17

service released to another party without identifying the servicer, only to then claim that UHM actually remained the servicer (FAC ¶ 33-34).

### 5.    Injunctive Relief, Quiet Title and Declaratory Relief

As to the fifth claim for injunctive relief, the elements are set forth in this motion and need not be reinstated. It should be emphasized, however, that monetary damages are inadequate when Plaintiff is seeking to void foreclosure proceedings and keep title to his Property, a property that he constructed from scratch to serve as the principal residence for himself and his family.

As to sixth claim for quiet title and seventh claim for declaratory relief, respectively, these claims seek an equitable judgment that the Notice of Default is void because it states that the Loan is due and owing for January 2024.  As set forth herein, the Loan is not due and owing for January 2024 when Plaintiff has made several payments on the Loan after January 2024 and qualified for a loan modification.  Defendants' secured interest in the Property is subject to the agreed upon modification detailed herein, and Defendant should not be able to foreclose pursuant to a Notice of Default that claims the Loan is due for January 2024, almost a year before UHM offered Plaintiff the modification.  Plaintiff has title to the Property and is seeking a judgment to modify his obligations on the Loan in accordance with what was promised to him by Defendants.

For these reasons, Plaintiff has demonstrated either a likelihood of success on

18

the merits or a probable success on the merits.

**E.      If Injunctive Relief Is Granted, Plaintiff Should Only Post a Monthly Mortgage Payment as a Bond**

Pursuant to FRCP Rule 65(c), the court may issue a security bond in an amount it deems "proper" given the circumstances.  In the event the Court grants the Motion, Plaintiff should only be required to pay the mortgage payment per month to the court until this matter is resolved.  Pursuant to the terms of Note, that amount is $1,562.68 **(Exhibit A,** Exhibit 1 thereto, page 1; **Exhibit B, ¶**31).   If Defendants prevail in this lawsuit, they suffer no harm because the Property's equity increases with each mortgage payment made by Plaintiff.  Plaintiff would carry the burden of maintaining the status quo of the Property during the pendency of this lawsuit.

**V.      Conclusion**

For the reasons set forth herein, Plaintiff respectfully requests the court grant an FRAP 8 injunction pending appeal.

DATED:  July 29, 2026                    ANDREW BAO & ASSOCIATES


By:/s/ *Andrew A. Bao*
            Andrew A. Bao, Esq.
            Nevada Bar No. 10508
            8020 S. Rainbow Blvd., 100-163
            Las Vegas, NV. 89139
            Attorneys for Appellant

19

3586854.1

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify as follows:

1.      This motion complies with the type-volume limitation of Circuit Rule 27 because it contains 4,255 words in sum.

2.      This brief also complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (or later) in 14-point Times New Roman font.


DATED:  July 29, 2026                    ANDREW BAO & ASSOCIATES


By:/s/ *Andrew A. Bao*
          Andrew A. Bao, Esq.
          Nevada Bar No. 10508
          8020 S. Rainbow Blvd., 100-163
          Las Vegas, NV. 89139
          Attorneys for Plaintiff

3586854.1

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 29, 2026.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED:  July 29, 2026        ANDREW BAO & ASSOCIATES

By:/s/ *Andrew A. Bao*
Andrew A. Bao, Esq.
Nevada Bar No. 10508
8020 S. Rainbow Blvd., 100-163
Las Vegas, NV. 89139
Attorneys for Plaintiff

21